UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                                      CASE NO. 6:15-bk-03448-KSJ
                                                            CHAPTER 11
ORLANDO GATEWAY PARTNERS, LLC,

      Debtor.

_____/

GOOD GATEWAY, LLC, a Florida limited              Adv. Case No. 6:15-ap-00098-KSJ
liability company, and SEG GATEWAY, LLC,
a Florida limited liability company

      Plaintiffs,

vs.

NILHAN FINANCIAL, LLC,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW**

      Defendant, Nilhan Financial, LLC, by and through its undersigned counsel and pursuant

to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b), hereby moves this Court for entry of an

order dismissing the complaint (Doc. No. 1) with prejudice for failure to state a claim on which

relief can be granted and says:

*Introduction*

      1.     Defendant owns and holds a mortgage on real property owned by the debtor,

Orlando Gateway Partners, LLC.  The complaint seeks to challenge this mortgage interest by

asserting the following three (3) claims:  (a) that enforcement of the mortgage is barred by the

five-year limitations period applicable to mortgages in Florida under Section 95.281(1)(a),

Florida Statutes (Count III and Objection to Claim No. 10); (b) that the mortgage debt should be

recharacterized as equity (Count II) and (c) that the mortgage interest should be equitably subordinated pursuant to 11 U.S.C. § 510(b).  For the reasons set forth below, the complaint should be dismissed with prejudice for failure to state a claim on which relief can be granted.

### *The Allegations of the Complaint Demonstrate that the Action is not Time-Barred*

2.      As it relates to the claim that enforcement of the mortgage is time-barred under Section 95.281(1)(a), the complaint makes the following pertinent allegations:

a.      Defendant owns and holds a mortgage on real property owned by the debtor securing a loan owed by the debtor.  Complaint ¶ 10.  Defendant purchased the loan, including the mortgage, in 2008 from a third party lender, Georgian Bank, for a purchase price of approximately $23 or $24 million.  Complaint ¶¶ 1, 26, 27, 28 & 49.

b.      The mortgage was recorded in the Orange County public records on November 15, 2007.  Complaint, Exhibit D.  The mortgage states in Section (a) on page 3 that the final payment on the loan was due "not later than November 14, 2008, *unless extended pursuant to the terms of the promissory note."*  (emphasis added)  Complaint, Exhibit D.  The promissory note, which is not recorded, provides that the maker shall have an option to extend the maturity date of the note for up to two (2) additional twelve (12) month periods so long as the full term of the loan does not exceed thirty-five (35) months.  Complaint, Exhibit C.

c.      On or about August 22, 2008, the debtor and Defendant entered into a mortgage modification agreement which was record in the Orange County public records on September 3, 2008.  Complaint ¶ 29, Exhibit J.  The mortgage modification memorializes a future advance of $1,247,948.00 under the loan which is added to the amount due under the original note and which is evidenced by an amended and restated

promissory note.  Complaint ¶ 29 & 30; Exhibit J.  The mortgage modification does not

state a maturity date for the modified loan obligation but instead simply references the

amended and restated promissory note.  Complaint, ¶ 30 & Exhibit J.  The amended and

restated promissory note, which is not recorded, provides for a new maturity date of July

15, 2011.  Complaint ¶ 30, Exhibit K.

3.        Section 95.281(1)(a) applies five-year limitations period to mortgages "when the

final maturity of an obligation secured by a mortgage is ascertainable from the record of it."

However, if "the final maturity of … the mortgage is not ascertainable from the record of it," the

limitations period is 20 years.  Fla. Stat. § 95.281(1)(a).  The law is clear that the five-year

limitations under this section applies only if the maturity date of the obligation is "ascertainable

by one who reads the county records."  *Layton v. Bay Lake Ltd. Partnership*, 818 So.2d 552, 553

(Fla. 2nd DCA 2002); *see Monte v. Tipton*, 612 So.2d 714, 716 (1993) (five year limitations

period did not apply where mortgage provided that the "remaining unpaid shall become due and

payable forthwith *or thereafter* at the option of the mortgagee.").  When applying the statute, the

question to be addressed is not when the mortgage obligation matures under the relevant loan

documents but whether the maturity date can be ascertained without having to review

information not disclosed in the public records.  *See Pitts v. Pastore*, 561 So.2d 297, 299 (Fla.

2nd DCA 1990) (Section 95.281(1)(a) was inapplicable because conflicting language of an

overdue promissory note and recorded mortgage did not allow one to determine the final

maturity date of the obligation from the county records).

4.        In the instant case, it is undisputed based on the allegations of the complaint that

the maturity date of the mortgage obligation cannot be ascertained by one who reads the county

records.  The recorded mortgage plainly refers the reader to an unrecorded promissory note for a

determination of whether the maturity date has been extended by the maker. This fact alone renders Section 92.281(1)(a) inapplicable. Additionally, it is alleged that the recorded mortgage modification states no maturity date for the modified obligation but instead references an unrecorded amended and restated promissory note which includes an additional advance of $1,247,948.00. The reader of the county records would clearly have to review the amended promissory note to determine the maturity date under the mortgage as modified. The amended promissory note establishes a new maturity date of July 15, 2011 that cannot be found anywhere in the public record. Under these circumstances the statute plainly does not apply.[1] *Layton*, 818 So.2d at 553 (if the promissory note itself is not recorded and the recorded mortgage does not state a maturity date, the maturity date is not ascertainable from the public record and limitations period is therefore 20 years); *Pitts*, 561 So.2d at 299.

### *The Claim for Recharacterization of the Mortgage is Facially Deficient*

5.      The claim that Defendant's mortgage should be recharacterized as equity is deficient for multiple reasons. First, there is no basis for recharacterizing the mortgage where the complaint admits that the mortgage was a valid debt obligation, not equity, at the time it was created. Additionally, there is no basis alleged in the complaint for invalidating a mortgage interest in real property irrespective of any allegations which seek to recharacterize the underlying debt as equity. Finally, the claim is barred by the doctrine of res judicata because Defendant has already prevailed on the same claim in the state court litigation that preceded this Chapter 11 case.

---

[1] The complaint asserts that this new maturity date applies only if the future advance provided for in the mortgage modification was actually funded. This assertion actually buttresses the conclusion that the statute does not apply. If the reader of the county records needs to determine whether a future advance was actually funded (a fact clearly outside the county records) to determine the maturity date of the mortgage obligation, the reader plainly cannot ascertain the maturity date by reading the county records.

6.      The complaint admits that Defendant's mortgage debt arose out of a loan of $24,262,052.00 made to the debtor by an institutional lender, Georgian Bank.  Complaint ¶¶ 1 & 26.  Specifically, the complaint alleges that the mortgage debt "arises out of a note and mortgage originally made by Georgian Bank to the" debtor.  Complaint ¶ 1.  There is no allegation whatsoever that Georgian Bank is affiliated with the debtor, that the loan made by Georgian Bank was anything other than a typical debt incurred by the debtor from a commercial lender who actually loaned $24,262,052.00 to the debtor or that Georgian Bank was actually making a disguised capital contribution.  Absent such allegations the claim must fail.

7.      A debt will not be recharacterized as equity unless it was not a valid debt *at its inception* but instead an equity contribution. (emphasis added)  *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 747-48 (6th Cir. 2001) (recharacterization is appropriate where the facts show that a debt transaction was actually an equity contribution *ab initio*); *In re First NLC Fin. Servs., LLC*, 415 B.R. 874, 879 (Bankr. S.D. Fla. 2009).  As set forth above there is no allegation whatsoever the mortgage debt was actually equity at its inception.  The complaint does contain multiple allegations concerning the purported conduct of Defendant which supposedly occurred after Defendant acquired the mortgage from Georgian Bank (*e.g.*, allegations that Defendant failed to enforce its right under the mortgage after acquiring it and that Defendant controlled the debtor as a result of acquiring the mortgage) and other supposed indicia of a capital contribution. Complaint ¶¶ 66- 75.  These allegations are offered in an attempt to buttress the claim for recharacterization.  However, this purported conduct is irrelevant to a claim for recharacterization of debt to equity because it has nothing to do with the nature of the transaction *at its inception*.  Such conduct is potentially relevant only in a claim for equitable subordination, which is an entirely different legal theory.  *AutoStyle Plastics, Inc.*, 269 F.3d at 749; (while

5

recharacterization cases turn on whether a debt actually exists at its inception, equitable subordination claims turn on whether a legitimate creditor engaged in inequitable conduct which justifies the subordination of the creditor's claim to that of another creditor); *In re Daufuskie Island Properties, LLC*, 431 B.R. 649, 655 (Bankr. D.S.C. 2010) (the test for recharacterizing a loan to equity is to determine the intent of the parties at the time they entered into the loan transaction).

8.     The recharacterization claim is also barred because even assuming *arguendo* the debt could be recharacterized, such recharacterization would have no effect on Defendant's real property interest – the mortgage.  A mortgage interest in real property cannot be nullified absent an allegation that it was executed without consideration.  *In re Daufuskie Island Properties, LLC*, 431 B.R. at 656-657.  A mortgage executed with valid consideration (*e.g.*, a loan of money) remains unaffected even if the underlying debt is recharacterized as equity.  *Id.*  The complaint admits valid consideration in the form of $24,262,052.00 loaned by Georgian Bank to the debtor.

9.     The recharacterization claim is also barred by the doctrine of res judicata.  In 2010, Plaintiffs sued Defendant in a state court action and in such action prosecuted claims against Defendant which sought to invalidate Defendant's mortgage and to obtain a declaration that the mortgage interest was inferior to Plaintiffs' alleged rights in the debtor's property ("Prior Action").  The claims were prosecuted through a jury trial to final judgments.  True copies of the Second Amended Complaint and the Amended Crossclaim which contain these claims in Counts XII & XI respectively are attached hereto as composite Exhibit "A."  True copies of the jury verdicts and the final judgments entered in favor of Defendant on these pleadings are attached hereto as composite Exhibit "B."  Defendant requests that the Court take judicial notice of all of these pleadings, verdicts and judgments pursuant to Rule 201 of the Federal Rules of Evidence.

6

The Court is free to do so on a motion to dismiss. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664 (N.D. Tex. 2011)

10.     These claims in the Prior Action were based on the same operative facts and circumstances which occurred from 2007 to 2009 and which form the basis of the instant action. Specifically, Plaintiffs alleged in the Prior Action that Defendant became mortgage holder on the debtor's property, that Defendant as a supposed co-conspirator with the principal of the debtor held the mortgage as a pretext for ownership and control of the property and that Defendant supposedly engaged in extensive inequitable conduct along with the debtor's principal and affiliated companies to deprive Plaintiffs of their rights in the debtor's property.[2]  See the Second Amended Complaint and the Amended Crossclaim in the Prior Action (composite Exhibit "A.").

11.     The jury in the state court lawsuit found in favor of Defendant, and final judgments were entered in favor of Defendant on all claims in the state court case.  See the jury verdicts and final judgement entered in the Prior Action (composite Exhibit "B.").

12.     The doctrine res judicata precludes a party from re-litigating any claim that arises out of the same operative facts that were previously litigated to a final judgment in an action between the same parties.  *Puff 'N Stuff of Winter Park, Inc. v. Fed. Trust Bank, F.S.B.*, 945 F. Supp. 1523, 1529 (M.D. Fla. 1996) *aff'd sub nom. Puff 'N Stuff v. Fed. Trust Bank*, 129 F.3d 616 (11th Cir. 1997) (if a case arises out of the same nucleus of operative facts or is based upon the same factual predicate as a former action, the two cases are really the same claim for purposes of res judicata).  The recharacterization claim arises out of the same operative facts alleged in the Prior Action and seeks the same relief sought by Plaintiffs in the Prior Action, invalidation of Defendant's mortgage and subordination of Defendant's right to be paid to the alleged rights of

---

[2] The Prior Action was removed to this Court and is pending before the Court as adversary proceeding no. 6:15-ap-00084-KSJ.

Plaintiffs.  Plaintiffs have already prosecuted their recharacterization claim to final judgment under a different technical guise and have lost.  The claim is therefore barred.  *Id.*

### *The Claim for Equitable Subordination is Barred by the Doctrine of Equitable Estoppel*

13.    The claim for equitable subordination is barred by the doctrine of collateral estoppel.  The complaint alleges that equitable subordination is justified because Defendant "is an insider and in *de facto* control of OGP" and that Defendant "has exerted so much control over the decision-making processes of OGP" that Defendant "has dominated the free will of OGP and should be held accountable as a fiduciary."  Complaint ¶ 60.  It is further alleged that Defendant acted inequitably by supposedly (a) causing the debtor to breach its fiduciary duties to Plaintiffs, (b) releasing its mortgage rights regarding the Frontage Property without reducing the amount of the mortgage remaining on the rest of the Original Property; (iii) failing to honor the construction loan commitment contained within the General Assignment; and (iv) using OGP as a mere instrumentality or alter ego.  Complaint ¶ 61.  However, these allegations were tried to the jury in the Prior Action, and Plaintiffs lost.  Specifically, in the Prior Action Plaintiffs alleged that Defendant owned and controlled the property and owed a fiduciary duty to Plaintiffs as a result of such control.  See the Second Amended Complaint and the Amended Crossclaim in the Prior Action (composite Exhibit "A.").  They further alleged the Defendant was a mere alter ego and instrumentality of the debtor and the debtor's principal and that Defendant conspired with the debtor and its principal to breach their fiduciary duties to Plaintiffs.  They allege that Defendant committed the same litany of inequitable and wrongful acts alleged in the instant action which were all designed to cause Plaintiffs the same harm they are complaining of in the instant action. See the Second Amended Complaint and the Amended Crossclaim in the Prior Action (composite Exhibit "A.").  These allegations were the essential allegations of fact on which the

Plaintiffs' claims for civil conspiracy, breach of fiduciary duty, tortious interference, conversion and constructive fraud and other alleged civil wrongs were based in the Prior Action.  The jury considered all of the allegations offered in support of these claims and rejected them.  See the jury verdicts and final judgement entered in the Prior Action (composite Exhibit "B.").

14.    Collateral estoppel is a complete defense to the re-litigation of an issue when there is an identity of parties and issues and an actual litigation thereof in a prior action. *Se. Fid. Ins. Co. v. Rice*, 515 So. 2d 240, 242 (Fla. Dist. Ct. App. 1987).  The doctrine is based on the principal that:

> [a]ny right, fact or matter in issue and directly adjudicated, or necessarily involved in the determination of an action before a competent court in which a judgment or decree has been rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the same parties and their privies, whether the claim, demand, purpose or subject-matter of the two suits is the same or not.

*In re Constructors of Florida, Inc.,* 349 F.2d 595, 599 (5th Cir.1965), *cert. denied sub nom., Coral Gables First National Bank v. American Surety Co.,* 383 U.S. 912, 86 S.Ct. 886, 15 L.Ed.2d 667 (1966); *Se. Fid. Ins. Co. v. Rice*, 515 So. 2d at 242.

15.    The allegations of Defendant's purported bad conduct in the instant action is the same conduct alleged in the Prior Action as the basis of claims for civil conspiracy, breach of fiduciary duty, constructive fraud and other alleged civil wrongs were based in the Prior Action.  The jury necessarily rejected these allegations when it found against Plaintiff on every one of these claims.  Plaintiffs should be precluded from litigating these allegations again under the guise of a new type of claim.

### *Conclusion*

16.    For the foregoing reasons, Defendant submits that the complaint should be dismissed with prejudice.

17.    Defendant estimates that a hearing on this motion will require 30 minutes.

Respectfully submitted,

/s/ Michael A. Tessitore
MICHAEL A. TESSITORE
Florida Bar No. 948039
mtessitore@morankidd.com
Moran Kidd Lyons & Johnson, P.A.
111 N. Orange Ave., Suite 900
Orlando, Florida 32801
407-841-4141
407-841-4148 (fax)
Attorneys for Defendant, Nilhan Financial, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically or by United States Mail on the 24th day of September, 2015 on the following:

R. Scott Shuker, Esq.                    Jon E. Kane, Esq.
Mariane L. Dorris, Esq.                  Mateer & Harbert, P.A.
Latham Shuker Eden & Beaudine LLP        225 E. Robinson Street, 600
Post Office Box 3353                     Orlando, FL 32801
Orlando, FL 32802

/s/ Michael A. Tessitore