UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              CASE NO. 6:15-bk-03448-KSJ
                                                    CHAPTER 11
ORLANDO GATEWAY PARTNERS, LLC,

       Debtor.

_____/

GOOD GATEWAY, LLC, a Florida limited                Adv. Case No. 6:15-ap-00098-KSJ
liability company, and SEG GATEWAY, LLC,
a Florida limited liability company

       Plaintiffs,

vs.

NILHAN FINANCIAL, LLC,

       Defendant.

_____/

**DEFENDANT'S REPLY TO PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO MOTION TO DISMISS**

       Defendant, Nilhan Financial, LLC, by and through its undersigned counsel, hereby

replies to Plaintiffs' memorandum of law in opposition to Defendant's motion to dismiss

("Opposition," Doc. No. 17) and says:

       1.    Defendant filed its motion to dismiss the complaint on September 24, 2015

("Motion," Doc. No. 14).  Plaintiffs filed their Opposition to the Motion on October 7, 2015.

The Opposition makes arguments in support of the three (3) legal theories that Plaintiffs asserted

in the complaint in an attempt to invalidate the mortgage which Defendant purchased from

Georgian Bank.  These theories are: (1) statute of limitations, (2) recharacterization of debt to

equity and (3) equitable subordination.  For the reasons set forth below, these arguments should

be rejected.

*Statute of Limitations*

2.      Plaintiffs argue in the Opposition that the arguments raised in the Motion relating to the statute of limitations "rest on the resolution of factual ambiguities contained in the Note, Mortgage and Mortgage Modification, as defined in the complaint." This is plainly incorrect.

3.      Regarding the limitations period provided for in Section 95.281(1)(a), the cases cited in the Motion make clear that this section has no applicability if the maturity date of the loan cannot be ascertained solely by reviewing the documents recorded in the public records. The complaint identifies the documents which have been recorded in the public records, the mortgage and the mortgage modification, and attaches them as exhibits.  See Exhibits C & J to the complaint.  These documents are considered part of the pleading.  The Court can simply review these documents and determine whether the maturity date of the obligation can be ascertained from the face of the documents.  If the Court cannot definitively ascertain the maturity date of the loan solely by reviewing these recorded documents, the analysis ends there and the claim based on Section 95.281(1)(a) (Count III) should be dismissed.  There is no ambiguity that needs to be resolved.

4.      The Opposition argues that there is ambiguity because the Motion "cites to an unrecorded promissory note which would allegedly need to be referenced to determine a new maturity date."  However, it is not the Motion that cites to an unrecorded promissory note in order to determine the maturity date.  It is the recorded mortgage and mortgage modification attached to complaint which refer the reader to unrecorded promissory notes in order to ascertain the maturity date.  The Motion simply points this out.  Because the complaint and its attachments refer to documents outside the public record as being necessary to determine the maturity date, the complaint unambiguously admits that Section 95.281(1)(a) does not apply.

5.      Concerning Section 95.11(2)(b), the issue before the Court on a motion to dismiss is whether the complaint alleges facts showing the foreclosure action was commenced more than five (5) years after a breach of the loan obligation.  The complaint alleges that an amended and restated promissory note was executed on August 22, 2008 and that such note (1) amended and restated the original loan obligation of $24,262,052, and (2) added an additional advance to the loan obligation.  The amended and restated promissory note, which is attached as Exhibit K to the complaint, plainly establishes a new maturity date for the loan of July 25, 2011.  The complaint alleges that the foreclosure action was commenced on February 25, 2015, well within five (5) years of the maturity of the amended and restated note.  The complaint does not allege that the amended and restated promissory note was ever breached before it matured.  On these facts, the foreclosure action could not have been time barred under Section 95.11(2)(b) because the loan neither matured nor was breached more than five (5) years before the foreclosure was filed based on the plain allegations contained within the four corners of the complaint.

6.      Plaintiffs attempt to avoid this result by alleging on information and belief that the additional advance referenced in the amended and restated promissory note was not actually funded.  Even if this fact were true (which it is not), it would not change the fact that the promissory note was amended and restated and that it clearly established a new maturity date (July 15, 2011) for the original $24,262,052.00 loan obligation.  There is no allegation that this amended and restated loan obligation was ever breached.  It is admitted that the foreclosure action was filed within five (5) years of the maturity date of this obligation.  There are therefore no facts alleged in the complaint which would support the application of Section 95.11(2)(b) as a time bar.

### *Recharacterizaton of Debt as Equity*

7.      The Opposition argues that the debt may be recharacterized as equity because it was "Defendant's intent to create an equity investment" when it purchased the loan.  However, Defendant's intent at the time he transferred money to third party (Georgian Bank) to purchase the loan is irrelevant to the recharacterization test.  The test examines the nature of funds that are contributed to the debtor, not funds that are paid to a third party to acquire an existing debt instrument. *See generally In re First NLC Fin. Servs., LLC*, 415 B.R. 874, 879 (Bankr. S.D. Fla. 2009) (recharacterization prevents an equity investor from labeling *its contribution to the debtor* as a loan under certain circumstances [emphasis added]).  The fact that Defendant gave money to Georgian Bank in August 2008 therefore has no relevance to the question of whether funds contributed by Georgian Bank into the debtor in November 2007 constituted debt or equity.

8.      In the Opposition, Plaintiffs suggest that Defendant "paid off" the Georgian Bank loan in apparent attempt to recast the payment to Georgian Bank as a type of contribution by Defendant.  This suggestion is directly contrary to the allegations of the complaint which state that Georgian Bank "assigned all of its rights, title and interest" in the loan to Defendant and that Defendant became the "owner and holder" of the loan documents.  See paragraphs 28 and 31of the complaint.  If a loan is paid off, it is satisfied not assigned to a new owner and holder as the complaint alleges.

9.      In an attempt to avoid the res judicata bar to the recharacterization claim, the Opposition contends that the declaratory relief counts in the second amended complaint and the amended crossclaim were dismissed without prejudice, citing a dismissal order entered by Judge Munyon on September 26, 2014 ("Dismissal Order").  This is not accurate.  The Dismissal Order makes no reference to a dismissal without prejudice.  Instead, Judge Munyon expressly states in

the Dismissal Order that these counts seek an "impermissible double recovery" and that she will

enter final judgments on the second amended complaint and the amended cross claim

*encompassing all defendants and all counts.* (emphasis added)  Judge Munyon then entered final

judgments on all counts which included a final judgment in favor of Defendant on all claims

asserted against it and which stated that Plaintiffs will take nothing from the action as it relates to

Defendant.   These judgments are attached to the Motion as composite Exhibit B.   The

declaratory relief counts have therefore been litigated through final and conclusive judgments in

favor of Defendant, and the doctrine of res judicata bars any re-litigation of these claims.[1]

### *Equitable Subordination*

10.      Concerning the equitable subordination claim, Plaintiffs attempt to the avoid the

collateral estoppel effect of the state court judgments by alleging in the Opposition that the

allegations of the equitable subordination claim are distinct from the allegations against

Defendant in the state court action.  While the phase "equitable subordination" was not used in

the second amended complaint and amended crossclaim in the state court action, the allegations

---

[1] Plaintiffs also state in the Opposition that the *Daufuskie* decisions does not stand for the proposition for which it is cited.  However, the decision indicates that even if grounds exist to equitably subordinate a debt, nullification of a mortgage interest supported by valid consideration interest is not permissible.  The court in *Daufuskie* held as follows:

> Aside from an application of the eleven factors, the Court cannot agree with Dixon's conclusion that even if a reclassification of the CS Note as equity was warranted, it would nullify the CS Mortgage.  In his response to Carolina Shores' Motion, Dixon cites *McCaughrin & Co. v. Williams,* 15 S.C. 505 (1881) for the premise that such a reclassification would render the CS Mortgage a nullity. The *McCaughrin* court found that "where the mortgage does not undertake within itself to specify and reasonably ascertain the debt, that debt must be fixed elsewhere, because the mortgage is executed for the sole purpose of securing the debt, and, therefore, when there is nothing fixing the debt, the mortgage is a nullity." *Id.*  However, the Court finds the *McCaughrin* case is distinguishable because it involved a mortgage that was executed without consideration as there was no evidence of any indebtedness prior to the execution of the mortgage, and the mortgage itself did not specify any debt.  In the present case, the CS Mortgage secures the debt fixed by the CS Note.  Accordingly, the Court is not persuaded that even if a consideration of the *Dornier* factors merited a reclassification of the CS Note that the CS Mortgage would be rendered void.

*In re Daufuskie Island Properties, LLC*, 431 B.R. 649, 656-57 (Bankr. D.S.C. 2010)

of purported bad conduct in those pleadings are the same allegations on which Plaintiffs rely for the equitable subordination claim.  The equitable subordination claim simply rehashes the factual history of the real estate project and the related companies and then regurgitates the same allegations of bad conduct by Defendant which supposedly caused Plaintiffs harm.  This can be verified by a side-by-side reading of the state court pleadings (the second amended complaint and amended crossclaim) and the complaint in the instant action.  These allegations have already been litigated and rejected by the jury and merged into a final judgment in favor of Defendant.  Recasting these allegations as equitable subordination should not be permitted.  It is unfair to Defendant who has already prevailed on these allegations after several years of litigation.  It also runs counter to the policy that once a matter has been fully and fairly litigated, judicial resources should not be expended to litigate it again.  *See In re Zoernack*, 289 B.R. 220, 228 (Bankr. M.D. Fla. 2003) (stating that the underlying rationale behind the doctrine of res judicata [which is akin to collateral estoppel] is that it protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions).

WHEREFORE Defendant, Nilhan Financial, LLC, respectfully requests that the Court dismiss the complaint with prejudice, and grant such further relief as the Court deems just and proper.

/s/ Michael A. Tessitore
MICHAEL A. TESSITORE
Florida Bar No. 948039
mtessitore@morankidd.com
Moran Kidd Lyons & Johnson, P.A.
111 N. Orange Ave., Suite 900
Orlando, Florida 32801
407-841-4141
407-841-4148 (fax)
Attorneys for Defendant, Nilhan Financial, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically or by United States Mail on the 29th day of October, 2015 on the following:

R. Scott Shuker, Esq.                    Jon E. Kane, Esq.
Mariane L. Dorris, Esq.                  Mateer & Harbert, P.A.
Latham Shuker Eden & Beaudine LLP        225 E. Robinson Street, 600
Post Office Box 3353                     Orlando, FL 32801
Orlando, FL 32802

/s/ Michael A. Tessitore